**FILED**
**JAN 15 2014**
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE ASSIGNED
CALL NUMBER (618) 580-9550

Case No. 14-mj-3004-DGW

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Neal Rohlfing, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (618) 580-9550 (the "**TARGET TELEPHONE**"), whose service provider is Sprint, a wireless telephone service provider headquartered at 6550 Sprint Parkway, Overland Park, Kansas. The subscriber of the **TARGET TELEPHONE** is unknown, with an account billing address of **Mario SHAW,** 6 Chamberlain Ct., Belleville, Illinois 62223, and the user of **TARGET TELEPHONE** being **Mario SHAW.** The **TARGET TELEPHONE** is further described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. The affiant, Neal Rohlfing, is a Task Force Officer with the Drug Enforcement Administration (DEA) assigned to the Fairview Heights Resident Office. The affiant has been a Task Force Officer with DEA since January of 2010. I was assigned with the St. Clair County Drug Tactical Unit for two years prior to my assignment with the Drug Enforcement Administration. During his time with DEA, the affiant has participated in numerous investigations involving the manufacture, transportation, and distribution of controlled

substances. These investigations have resulted in the seizure of controlled substances and proceeds from the sale of controlled substances, as well as arrests and convictions of drug traffickers. The affiant is familiar with and has utilized normal methods of investigation, including but not limited to physical and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, analysis of telephone records, the utilization of undercover agents, and the use of court-authorized wire intercepts. The affiant has applied for and been granted numerous Precision Location Information orders similar to this order which have aided in identifying individuals, arresting fugitives, and seizing illegal drugs and drug proceeds.

3. The facts in this affidavit come from the affiant's personal observations, the affiant's training and experience, and information obtained from other agents, witnesses, and Confidential Sources (referred to as CS's). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of the affiant's knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (the "**TARGET OFFENSES**") have been committed, are being committed, and will be committed by the user of the **TARGET TELEPHONE**, and other known and unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. For the reasons set out in this affidavit, there is probable cause to believe that the **TARGET OFFENSES** have been committed by **Mario SHAW**. Further, there is probable cause to believe the user of the **TARGET TELEPHONE, Mario SHAW,** is involved in the ongoing commission of the **TARGET OFFENSES.**

## BACKGROUND OF INVESTIGATION

6. Members of the investigative team and I are investigating **Mario SHAW** for violations of Title 21, United States Code, Section(s) 841(a)(1) and 846. The investigation has shown that **Mario SHAW** uses the **TARGET TELEPHONE**.

7. Your affiant further states that there is probable cause to believe that signaling information, including cell site information, precision location information, and factory installed GPS information will lead to evidence of the aforementioned criminal offenses, the location of **Mario SHAW,** and to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

8. In October 2013, SA Michael Rehg, TFO Chad Nord, FBI SA Rick Box and I interviewed Confidential Source (CS#1) for an initial debriefing concerning his/her knowledge of Mario **SHAW's** narcotic related activities. CS#1 stated he/she has known **SHAW** for numerous years. CS#1 stated he/she knew **SHAW** to sell narcotics for quite some time, but recently in the past three months or so, start to deal heavily in cocaine. CS#1 stated he/she has purchased multiple ounces of cocaine from **SHAW** on numerous occasions. CS#1 stated he/she contacts **SHAW** at the **TARGET TELEPHONE** to discuss narcotics transactions. It should be noted, information provided by CS#1 since the initial debriefing in October 2013 led to an arrest and the seizure of drugs and drug proceeds. In addition, information provided by CS#1 in this

investigation has been corroborated by other sources of information. Based on this, it is believed the information provided by CS#1 to be reliable.

9. On December 16, 2013, SA Michael Rehg and I interviewed Confidential Source (CS#2) for an initial debriefing concerning his/her knowledge of Mario **SHAW**'s narcotic related activities. CS#2 stated he/she knows **SHAW** to distribute cocaine in the East St. Louis/Centreville, Illinois areas. CS#2 stated he/she has purchased cocaine from **SHAW** on numerous occasions. CS#2 stated he/she has purchased as much as one half kilogram of cocaine from **SHAW** at a time. CS#2 stated he/she usually purchases three to four ounces of cocaine from **SHAW** at a time, but recently purchased nine ounces from him. CS#2 stated he/she contacts **SHAW** at the **TARGET TELEPHONE** to discuss narcotics transactions. It should be noted information provided by CS#2 in this investigation has been corroborated by other sources of information. Based on this, it is believed the information provided by CS#2 to be reliable.

10. On January 10, 2014, CS#1 met with SA Michael Rehg, SA Rick Box, TFO Neal Rohlfing, and TFO Chad Nord at the Fairview Heights Resident Office in regards to the narcotic related activities of **SHAW**.

11. CS#1 informed agents that he/she spoke with **SHAW** on January 7, 2014, and **SHAW** informed CS#1 that he did not have any cocaine for sale. CS#1 advised **SHAW** informed him/her that he (**SHAW**) should have cocaine for sale in a couple days. CS#1 advised **SHAW** informed him/her that he (**SHAW**) sold his last ten (10) ounces of cocaine to Jamel LNU. CS#1 stated he/she was unsure of Jamel LNU's last name but that he works at the barber shop on Bond Avenue in Alorton, IL.

12. CS#1 agreed to make a recorded telephone call to **SHAW**. CS#1 called **SHAW** at the **TARGET TELEPHONE** at approximately 2:25 p.m., but **SHAW** did not answer. At

approximately 2:32 p.m., **SHAW** called CS#1 back from the **TARGET TELEPHONE**. DEA agents were present for both calls. **SHAW** informed CS#1 he was at work. CS#1 requested **SHAW** to call him/her when he got off work in order to do something, which regards to purchasing cocaine. According to CS#1, **SHAW** responded on January 14, 2014, and said he was anticipating cocaine in the near future.

13. Based on the information provided above it is clear to agents that **SHAW** is a drug distributor in the Southern District of Illinois area. Furthermore, it is believed that **SHAW** is utilizing the **TARGET TELEPONE**. It is anticipated that **SHAW** will continue to utilize the **TARGET TELEPHONE** to further violations of Title 21, USC 841 and 846.

14. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not

necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the **TARGET TELEPHONE**, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available.

16. Based on my training and experience, I know that Sprint can collect cell- site data about the **TARGET TELEPHONE.**

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property or any wire or electronic communication. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any electronic information (non-content) to obtain the authorized

location information, there is reasonably necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2). This warrant does not authorize the interception or seizure of the content of any communications.

19.   I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

20.   I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

21.   I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents

because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Neal Rohlfing
Task Force Officer
Drug Enforcement Administration

_____
for ANDREW SIMONSON
Assistant United States Attorney

Subscribed and sworn to before me on January 15, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS



## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(618) 580-9550**, (the "**TARGET TELEPHONE**"), whose wireless service provider is Sprint, a company headquartered at 6550 Sprint Parkway, Overland Park, Kansas. The subscriber of the **TARGET TELEPHONE** is unknown, with an account billing address of **Mario SHAW, 6 Chamberlain Ct., Belleville, Illinois 62223**, and the user of **TARGET TELEPHONE** being **Mario SHAW**. Information about the location of the **TARGET TELEPHONE** that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **TARGET TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property or any wire or electronic communication. In approving this warrant, the Court finds reasonable necessity for the delay of notice. *See* 18 U.S.C. § 3103a(b)(2).